IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$34,200 in U.S. Currency,<br><br>Defendant in Rem. | No. 3:22-CV- |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America alleges this *in rem* complaint for forfeiture against $34,200 in U.S. currency ("Defendant Property"):

### NATURE OF THE ACTION

**1.** This is a forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). The United States seeks the forfeiture of the Defendant Property, because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. The Defendant Property is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), because it was property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1957(c)(7) and 1961(1).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), and in rem jurisdiction is proper under 28 U.S.C. § 1355(b).

3. Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b), because acts or omissions giving rise to the forfeiture occurred in the Northern District of Texas and a substantial part of the events giving rise to the forfeiture occurred in the Northern District of Texas.

## PARTIES

4. The Plaintiff is the United States of America.

5. The Defendant Property is $34,200 in U.S. currency. The Defendant Property was seized from Darrel Leon Rose at DFW Airport, Texas, on November 16, 2021. On November 18, 2021, it was deposited into a Loomis bank account in Dallas, Texas.

6. Darrel Leon Rose ("Rose"), a resident of Jacksonville, Florida, claimed the Defendant Property on January 2, 2022.

## FACTS

7. The factual basis for the forfeiture in this case involves an investigation by the DEA Dallas Airport Interdiction Group ("DEA Task Force") at DFW Airport ("DFW"). One of the DEA Task Force's responsibilities at DFW is to investigate the use of the airport and the airlines that service the airport to perpetrate or facilitate the illegal transportation of proceeds obtained from criminal conduct including drug trafficking.

8. Those trafficking in illegal narcotics must often find a way to transport the proceeds of their criminal conduct without drawing the attention of law enforcement. Air travel is one mode used by the traffickers or couriers working for or with them to transport such proceeds. The use of air travel allows drug traffickers to keep their ill-gotten gains "off the books" and outside the banking system, which they know is regularly monitored by banking and governmental authorities.

9. Investigators with the DEA Task Force are specially trained and learn by experience how to identify those who are using the federal aviation system to facilitate narcotic trafficking.

10. On November 16, 2021, DEA Task Force members including Special Agents Sean Kassouf and Andrew Woeppel and Task Force Officers ("TFO") Michael McBride and Mark Adams received credible information regarding the suspicious travel of Darrel Leon Rose traveling on a one-way trip on American Airlines flight 2543 flying from DFW to Los Angeles, California.

11. TFO McBride conducted a record check and discovered that Rose had two checked bags. TFO McBride located the checked bags prior to them being transferred onto the plane. He noted a strong odor of marijuana coming from both bags.

12. SAs Kassouf and Woeppel approached Rose and verbally identified themselves with their names and badges. As Rose stood up from his seat, he said "Oh

shit." Rose asked if he was under arrest and SA Woeppel said that he was not. SA Woeppel then asked if he could speak to Rose about his travels, and he agreed.

13. During their conversation, SA Woeppel observed that Rose would not make eye contact, his speech was shaky, and he paced back and forth. In SA Woeppel's experience and based on his training, such unusual nervousness is potentially a sign that a person may be hiding something.

14. Rose confirmed he was flying from DFW to Lose Angeles on American Airlines flight 2543. SA Woeppel asked Rose where he was stayed while in Los Angeles and Rose stated he was planning on staying "a couple of days" at a hotel, but could not provide the name of the hotel. SA Woeppel asked what the purpose of his travel was, and Rose stated that he was "cheating on his wife" and that he'd be "visiting a girlfriend." Rose stated he lives in Dallas and travels to Los Angeles every two weeks.

15. SA Woeppel and SA Kassouf observed that Rose was traveling with a roller bag and brown purse. SA Woeppel asked Rose if the bags that Rose was carrying belonged to him and Rose stated that they did. Rose said he packed everything in the bags and everything in the bags. Rose also denied possessing weapons, drugs, or a large amount of U.S. or foreign currency.

16. During his conversation with Rose, SA Woeppel did not obstruct the path of Rose and he was free at any time to walk away from the conversation.

17.     TFO McBride transported Rose's checked bags to the terminal area. SA Woeppel asked Rose for consent to search his checked luggage and his carry-on bags and Rose said yes as witnessed by SA Kassouf.

18.     SA Kassouf, and TFOs McBride and Adams began searching Rose's bags and found seven large rubber banded bundles of U.S. currency between Rose's two checked bags. They found another eight rubber banded bundles of currency concealed among the contents of Rose's carry-on bags.

19.     SA Woeppel asked Rose how much money he possessed and Rose stated he had "about twenty grand." Rose stated all the currency belonged to him.

20.     SA Woeppel and SA Kassouf advised that they could smell the odor of marijuana coming from Rose's bags and their contents. In his experience SA Kassouf is aware that individuals will often hide currency in different locations in order to avoid detection from TSA Screening equipment or law enforcement.

21.     SA Woeppel asked Rose why he was traveling with so much money and he replied he was "going to do some Christmas shopping" in Los Angeles. SA Woeppel asked Rose what kind of business he does, and Rose paused, then answered he is in the "hauling" business. Rose could not answer follow-up questions about the fleet size, cab models, or type of hauling units or trailers in his business. SA Woeppel asked Rose what financial institutions he banked with and if he had any records showing the withdrawal of a large amount of cash. Rose replied that he banks at Wells Fargo and Chase and that he

withdrew money "from time to time" but he could not provide SA Woeppel with any online records from his cell phone.

22. SA Woeppel asked Rose to empty out the contents of his pockets and Rose complied. SA Kassouf observed that Rose removed an Apple iPhone from his pocket and placed it on the ground in front of SA Woeppel and SA Kassouf. SA Kassouf asked Rose if he had any photographs or text messages about the use, possession, sale or purchase of narcotics on his cellular phone. Rose did not answer. SA Kassouf asked for consent to search his phone, which Rose did not grant.

23. SA Kassouf informed Rose that the currency and his cell phone would be seized.

24. The money seized from Rose totaled $34,200. In SA Kassouf's experience, possession of such a large amount of currency is not typical of legitimate airport travelers.

25. A criminal background check revealed that Rose has an extensive criminal history that includes narcotics violations.

26. Additionally, officers looked for records supporting legitimate employment via the Texas Workforce Commission database and found no evidence of employment that would support Rose's possession of such a large amount of currency at the time it was seized.

## FIRST CAUSE OF ACTION
## 21 U.S.C. § 881(a)(6)
**(forfeiture of property related to drug trafficking)**

1. The United States reasserts all allegations previously made.

2. Under 21 U.S.C. § 881(a)(6), "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of" 21 U.S.C. § 801 et seq. are subject to forfeiture.

3. Under 21 U.S.C. § 841(a), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." An attempt or conspiracy to do the same is also prohibited by 21 U.S.C. § 846.

4. As set forth above, the Defendant Property is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. This property is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CAUSE OF ACTION
## 18 U.S.C. § 981(a)(1)(C)
### (forfeiture related to violation of the Travel Act)

5. The United States reasserts all allegations previously made.

6. Under 18 U.S.C. § 981(a)(l)(C), any property which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States.

7. Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 is a specified unlawful activity.

8. 18 U.S.C. § 1952(a) prohibits, inter alia, any individual who uses "any facility in interstate or foreign commerce,":

> with the intent to –
>
> (1) distribute the proceeds of any unlawful activity; or [ ]
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity"

from thereafter performing or attempting to perform the conduct described in subparagraphs (1) and (3) above.

9. 18 U.S.C. § 1952(b) specifically includes within the definition of "unlawful activity" "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)."

10. As set forth above, the Defendant Property is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952. This property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C).

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully asserts that the Defendant Property is forfeitable to the United States under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

The United States further requests:

A. That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b)(ii), the Clerk of the Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property.

B. That Notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

C. That a Judgment of Forfeiture be decreed against the Defendant Property;

D. That upon the issuance of a Judgment of Forfeiture, the United States Marshals Service or its delegate be able to dispose of the Defendant Property according to law; and

E. That the United States receives its costs of court and all further relief to which it is entitled.

DATED this 3rd day of May, 2022.

        CHAD E. MEACHAM
        UNITED STATES ATTORNEY


        */s/ Elyse J. Lyons*
        Elyse J. Lyons
        Assistant United States Attorney
        Texas Bar No. 24092735
        1100 Commerce Street, Third Floor
        Dallas, Texas 75242-1699
        Telephone: 214-659-8774
        Facsimile: 214-659-8805
        Elyse.lyons@usdoj.gov

        ATTORNEY FOR PLAINTIFF

## VERIFICATION

I am a Special Agent with the Drug Enforcement Agency (DEA). As a Special Agent with the DEA, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this 3 day of May 2022.

_____
Special Agent Sean Kassouf
Drug Enforcement Agency